JUSTICE SHEEHY,
dissenting:
It is provided in Rule 605, Montana Rules of Evidence:
“The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point” (Emphasis added.)
The statements made by the district judge at the hearing for post conviction relief were statements of fact, although he was an unsworn witness. Moreover, the district judge founded his findings of fact based on his own observations made at the hearing.
This is what occurred in the post-conviction hearing, when the matter was before the District Court:
“THE COURT: Do you have any other witnesses to call?
“MS. WING: No witnesses.
“THE COURT: Rebuttal witnesses?
“MR. ELISON: None.
“THE COURT: Counsel, let me make some observations for the record.
“Obviously I am not an expert or even an amateur on how a person acts when they are under the influence of cocaine. However, I did make these observations of Bernie Goldman when he was here during the trial.
“I didn’t see that he had any shakes or disruptive or mumbling speech. He had good eye contact. I didn’t see any mood swings in the sense that one minute he would be very angry, the next he would be euphoric. When the prosecution witnesses were on, he was his usual abrasive self, as he has been for many years, but that’s how he does his cases, and generally with some good success and sometimes not.
*340 “I noticed many discussions between the Defendant and Mr. Goldman during the trial, but I should point out that it’s been my experience with Bernie Goldman when he goes to trial, he runs his own show and that it seems to be his policy that he does not allow his clients to run the trial. He kind of decides how he is going to run the case and then he proceeds from there.
“It’s also been my experience with Mr. Goldman, and seemed to be his practice here, is that he will — he is quite clever about his trial tactics and his tactics here were consistent with that, for example, when he attempted to just very briefly passing mention the fact that the Defendant had to be — had a background check or get checked in order to have a license. I am sure he would have referred to this in his closing argument and, of course, the State seized on that as opening some information in regards to the Defendant’s background. If the State had not been alert, that would have slipped on through and the jury would have been left with the impression brought out by Goldman’s final argument that the Defendant was a model citizen as far as his business license is concerned.
“It seemed to me the gist of Goldman’s case that he was primarily concerned with the informer and he pressed that hard at all the pretrial proceedings and obviously he pressed it on appeal. And I got the impression that he knew the case was — and I will use it in quotes, ‘in trouble,’ as far as the search was concerned and the statements that may have been made by the Defendant.
“And in conclusion, Counsel, I am of the opinion that another result would not have occurred if he would have had another lawyer. I think that another lawyer would not have been able to obtain him a more favorable result. It is possible, but I don’t think so under the amount of evidence that the State marshaled against the Defendant in this case.
“Those are just, for the record, those are the observations that I made while we had the trial.
“I have examined the briefs that have been submitted in the case as well as the evidence presented here at the trial, and I do not feel that Mr. Goldman was an ineffective counsel. His decisions in many cases were tactical decisions that we may or may not agree with.
“I think he took the approach that to — the approach being not to spend a lot of time with issues that were obvious losers and went ahead into — to press on the one issue where he thought that he knew if he could require — get me to require the State to identify the informer, that the State’s case would collapse completely. And *341 that seemed to be the gist of his case at the beginning and then during the trial, to attack the credibility of the State’s witnesses during the trial itself.
“My conclusion, Counsel, is that your motion should be denied and it is so ordered.
“MS. WING: Your Honor, might I inquire, you have made some observations about Mr. Goldman and I wonder if you would mind putting something on the record of your years of experience with him or how long he has practiced in front of you.
“THE COURT: I have — as County Attorney I have had several cases against him and his father and eight years now of trials involving Mr. Goldman. And some of which he has been successful, but I didn’t see anything different in his behavior and actions in this trial from other ones. I don’t always agree with the way that Mr. Goldman tries his cases, but you can’t argue with success and he has in my court several very good successes, but this was not one of them.
“MR. ELISON: Regarding the Supreme Court opinion, how long do I have to get that to you? Tomorrow? Or is that not going to bear on the case at this point?
“THE COURT: Well, I have their opinion.
“MR. ELISON: Oh, okay — no, I mean the one in which Bernie was disbarred.
“THE COURT: Oh. I have a sense of what that is and I testified — no, it was not this case. I was aware of some of the allegations against him and so I have a pretty good idea what the circumstances were. It’s largely of his cocaine use, but like I said, Counsel, I have to admit that my expertise on cocaine users and how they behave in court is nonexistent, but he didn’t seem — he didn’t seem to be out of the norm for Bernie. And there were not occasions where I would talk to him and he would be like — would be spaced out or not understanding what I am saying, you know. And so he seemed to be tracking well at the trial and all I can say is he made some tactical decisions and some worked and some didn’t work.
“MR. ELISON: I suppose I could have used an expert witness on what an addict on cocaine would act like?
“THE COURT: Well, tell me —
“MR. ELISON: I don’t think there would be any particularly noticeable thing. It’s going to be — it is going to be mostly — it’s a speed, so it’s an upper and would make him more — it actually might make him more productive on occasions, but it is also kind of *342 a mind scrambler and so he will forget things. He will think that he is doing something that he really, really isn’t successfully doing. He will forget what has happened a day or two before. And probably when he leaves, he won’t get much sleep and it will throw his thinking off, but I suppose if there are no tactical errors or errors in the transcript that you can see —
“THE COURT: Well, I wouldn’t say that he — well, you know that thing about the — Mr. Coates’ background check, that’s not an error. That’s a classic Bernie Goldman, I hate to say, maneuver, but it is a maneuver and he almost slipped that thing through and he just ran it through very quickly and had the State not picked up on that, he would have had an outstanding base for a closing argument. That’s a classic Bernie Goldman maneuver. So I am not going to say it was wrong to do that. He might have gotten it by, if the County Attorney would not have been attentive at that point it would have been in. And that’s how Bernie tries his cases and he is frequently successful.
“MR. ELISON: So, in other words, it is not a mistake?
“THE COURT: I don’t think it was a mistake. I think it was purposeful on Bernie’s part, quite frankly, because I have seen him do things before. So that’s my ruling, Counsel.
“Would you make an appropriate order reflecting my ruling?
“MS. WING: I will.”
Because of Rule 605, M.R.Evid., the District Court was incompetent as a witness to testify as to his observations, sworn or unsworn, of the activities of counsel for the defendant during the District Court trial. If the District Court intended to be a witness, it should have been proper procedure to call in another district judge in order to hear the petition for post-conviction relief.
The point that the District Court made observations of fact as a witness is buttressed by the findings of fact made by the same judge which appear to be completely founded on the court’s own observations. Witness:

“Findings of Fact

1. The court observed no signs of Mr. Goldman being under the influence of drugs. There were no shakes or disruptive or mumbling speech. He had good eye contact. There were no mood swings in the sense that one minute he would be very angry, the next he would be euphoric. When the prosecution witnesses were testifying, he was his *343 usual abrasive self as he has been for many years. His style has generally had some good success and sometimes not.
“2. Mr. Goldman held many discussions with the Defendant during the trial. It has been the Court’s experience, however, that when Bernie Goldman goes to trial, it seems to be his policy that he controls the case and does not allow his clients to nm the trial.
“3. It has been the court’s experience that it is Mr. Goldman’s practice to be clever with his trial tactics, and his tactics in this case were consistent. For example, he attempted to very briefly in passing mention the fact that the Defendant had to have a background check in order to obtain a business license. He surely would have referred to this in his closing argument. If the State had not been alert, the information would have slipped on through and the jury would have been left with the impression that the Defendant was a model citizen. The State, however, seized on that as opening the testimony for information in regards to the Defendant’s background.”
The duty of a judge to conduct an impartial trial is illustrated in the following paragraph:
“The trial judge must strive to have the trial conducted in an atmosphere of impartiality. His conduct in trying a case must be fair to both sides, and he should refrain from remarks that may injure a litigant. He should not engage in conduct which amounts to acting as counsel for one of the parties. Except where authorized by statute, it is improper for a judge to assume the role of the witness in a case being tried before him, and doing so constitutes reversible error. How great a departure from fairness amounts to reversible error is determined by the answer to the fundamental inquiry whether or not was done was prejudicial to the appellant or plaintiff in error.” 75 Am.Jur.2d 191, Trial, sec. 87.
Rule 605 of the Montana Rules of Evidence is based upon its federal counterpart. Moore points out that the rule provides an “automatic objection” because to require an actual objection would confront the opponent with a choice of not objecting with the result of allowing the testimony, and objecting, with the probable result of excluding the testimony, but at the price of continuing the trial before a judge likely to feel that his integrity had been attacked by the objector. 10 Moore’s Federal Practice, (2d ed. 1976), para. 605.01 [3].
Two of the dangers pointed out by Moore in having the judge testify at the trial over which he is presiding are (1) who will rule on objections, claims of privilege and other matters normally under ju *344 dicial control, and (2) in a bench trial the judge who testifies will have to consider his own testimony in the light of other testimony in the case.
In adopting findings of fact in the case at bar, the district judge weighed his own testimony as observations against the evidence adduced by the defendant and based his findings of fact upon his own observations, thus rejecting the evidence and testimony of the defendant.
Moreover, both the District Court and the majority state as a fact in their Opinion that a new trial for the defendant would not end in a different result. Aside from it being sheer speculation, the probable future result of a fair trial should have no weight in considering whether a defendant receive a fair trial before an impartial tribunal in the former proceedings. The only question we should decide upon a petition for post-conviction relief is whether the defendant’s sentence is subject to collateral attack upon any ground of alleged error available under a writ of habeas corpus. Section 46-21-101, MCA. Those grounds do not include the possibility that in a new trial the defendant will be reconvicted.
For the reasons foregoing, I would remand for a new hearing on post-conviction relief before another district judge. Nothing would then preclude the present district judge from appearing as a witness to present his observations, which of course would be pertinent to the issues in this case.